UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-61377-GAYLES
MAGISTRATE JUDGE REID

DEVEN COOPER,

     Petitioner,

v.

JULIE JONES,[1]

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.  Introduction

The *pro se* petitioner, **Deven Cooper**, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence, entered following a jury trial in the Seventeenth Judicial Circuit, Broward County, case no. 10-003781CF10A.

This Cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c); S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

---

1 Julie L. Jones is no longer the Secretary of the Department of Corrections. Mark S. Inch is now the proper respondent in this proceeding. Inch should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

1

For its consideration of the petition (DE#1), the court has the state's response to this court's order to show cause, along with its supporting appendices (DE#s8,9,10), containing copies of relevant state court records, as well as Petitioner's reply (DE#11).

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises the following grounds:

**Claim 1**: Ineffective assistance of counsel for failing to call six exculpatory witnesses: Janee Maycock, Tonysha Hudson, Jennifer Schmidt, Richard Barnes, Paul Andres, and Tammy German. (DE# 1:4-5, 12-19).

**Claim 2**: Ineffective assistance of counsel for failing to object to the state's invocation of the rape shield law. (DE#1:6, 20-25);

**Claim 3**: Ineffective assistance of counsel for failing to object to the prosecutor informing the jury that the victim's attempted suicide was in response to Petitioner's actions. (DE#1:7, 25-29);

**Claim 4**: The trial court erred in restricting defense counsel's cross-examination of the victim based on Florida's rape shield law. (DE#1:8, 29-34);

**Claim 5**: Ineffective assistance of trial counsel for failing to introduce a letter written by the victim into evidence (DE#1:34-36);

**Claim 6**: Ineffective assistance of counsel for failing to request a statement of particulars and alibi jury instruction (DE#1:37-42);

**Claim 7**: Ineffective assistance of counsel for failing to introduce the victim's school records (DE#1:42-44);

**Claim 8**: Ineffective assistance of counsel for advising Petitioner not to testify at trial (DE#1:44-46);

2

**Claim 9**: Ineffective assistance of counsel for failing to object to evidence about a lie detector test (DE#1:46–49).

Under claims 5 through 9, Petitioner also alleges ineffective assistance of appellate counsel for failing to argue that trial counsel was ineffective for the reasons set forth under the respective claim.

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that Petitioner's motion be denied because Petitioner is not entitled to relief on the merits.

## II.  Factual and Procedural History

### Charges

On February 16, 2010, the state charged Petitioner by information with lewd and lascivious battery, in violation of *Fla. Stat.* § 800.04(4)(a) (count 1), and lewd and lascivious molestation, in violation of *Fla. Stat.* § 800.04(5)(c)2 (counts 2 & 3). (DE# 9, Ex. 3). Petitioner proceeded to trial. (DE#10, Trial Transcripts).

### Trial Evidence

The victim, T.C., testified to the following at trial. In the fall of 2008, when T.C. was 13 years old, she ran away from home and moved in with her cousin, Latoya Jackson. (T 150) Jackson's children and Jackson's boyfriend, Petitioner, lived with Jackson at the time. (T 151). T.C. ran away because she was not getting along with her mother. (T 167). T.C. shared a room with Jackson's youngest

3

daughter and got on well with the family. (T 152).

When T.C. got in trouble at school, Petitioner would discipline her at Jackson's directions. (T 153). He would hit or spank her. (*Id.*). One day, T.C. came home with pierced ears and Jackson became angry. (T 153). When T.C. told Petitioner, he yelled at her and made her remove the earrings. (*Id.*). He allowed her to call her mother. (T 153-54). T.C. told her mother that she wanted to go home. (*Id.*). After she hung up, Petitioner said "you know I want you, you have to stay here;" made her stand up; gave her a hug; started kissing her on the cheek; and then kissed her closer to her mouth. (T 154). Petitioner then asked T.C. if she had ever seen a penis before. (*Id.*) T.C. replied that she had not. (*Id.*). Petitioner opened his pants, took out his penis, and made her touch it. (*Id.*). T.C. was in shock and did not know what to do. (*Id.*). Petitioner told her not to say anything to anybody. (*Id.*).

A couple of weeks later, T.C. came home and told Jackson that she had withdrawn from school. (T 155). Jackson decided to homeschool T.C. and gave T.C. some books. (T 172-73). Petitioner came to T.C.'s room at bedtime, claiming he would help her with her studies. (T 155). Once they were alone, he told her to pull her pants down. (*Id.*). According to T.C., Petitioner then unbuttoned her pants and "stuck his fingers into [her] vagina." (*Id.*). T.C. backed up towards the dresser. (*Id.*). Petitioner stopped after about five seconds when they heard someone coming up the stairs. (*Id.*).

4

T.C. testified that some weeks later, Petitioner asked T.C. to go with him to the grocery store, but she declined. (T 156). According to T.C., Petitioner told her to get in the car and she did. Petitioner then asked if she would rather "have sex" with him or "suck his penis." (*Id.*). T.C. said neither and repeatedly declined his advances. (*Id.*). When they got to the parking lot of a bank, Petitioner pushed her head down and forced her to perform oral sex on him. (*Id.*).

T.C. moved out of Jackson's house approximately one month later. (T 158). She testified that she became depressed and wanted to kill herself. (T 159). She was given Thorazine and Prozac for depression and anger issues. (T 160). T.C. told two of her cousins, Janerra and T.H., what happened. (T158-59). She did not know whether they told anyone else. (*Id.*). A year later, T.C. told her mother. (T 159). Her mother contacted the police. (T 161).

On cross-examination by defense counsel, T.C. testified to the following. She ran away from her mother because they absolutely did not get along. (T 166). T.C.'s mother told Jackson she was going to bring T.C. home, but never followed through. (*Id.*). Her mother did not pay Jackson to take care of T.C. (T167). T.C. did not take Prozac until after the incidents with Petitioner had occurred, however, she was taking ADHD medication while living with Jackson. (T 168). There were only three incidents. (*Id.*). Several months after she moved back in with her mother, T.C. saw Petitioner at a birthday party. (T 169). He did not touch her, but "he was looking at

[her] and [her] little cousin like in a sexual-type of way" (*Id.*).

T.C. did not recall exactly when she began home-schooling at Jackson's home. (T 173). Petitioner would help her with her homework. (*Id.*). When she called her mother during the ear-piercing incident, her mother refused to take her back because her mother was afraid T.C. would end up repeating a grade. (T 173-74). When T.C. threatened to kill herself, she was sent to the hospital. (T 175-76). Upon her release, she informed her mother about the incidents with Petitioner. (T 177). During the state's re-direct examination of T.C., she explained that she had attempted suicide due to Petitioner's actions. (T 199-200).

On cross-examination, T.C. testified to the following about a letter she wrote to Jackson and Petitioner. (T 191-92). After she stopped living at Jackson's house, she did not want to go back to her mother's house. (T 191). She wrote a letter to Jackson and Petitioner because she wanted to return to live with them. (*Id.*). She did not remember the letter's contents. (*Id.*). She conceded that she thanked the Petitioner in the letter, but only because her cousin told her to. (T 198-99).

Defense counsel called Watania Jackson ("Watania"), the daughter of Petitioner and Jackson, to testify to the following. (T 237).  Watania and T.C. were like sisters. (T 238). T.C. told Watania everything, but never mentioned being molested. (T 244). Watania did not help T.C. write the letter to Petitioner and Jackson. (T 248-49).

While T.C. lived with them, Watania dropped her off and picked her up from school. (T 239). When T.C. first arrived, T.C. was making good grades and there was no problem with her behavior. (T 240). Watania was homeschooled, but T.C. was not homeschooled to her knowledge. (T 241). When T.C. started getting in contact with her mother, T.C.'s grades went down, she got into fights, and her friend pierced her ears at school. (T 240). T.C. got in trouble for letting a friend pierce them, rather than going with Watania to get their ears pierced together. (*Id.*). If they did something very bad, they would get a spanking in front of everybody. (T 241). Petitioner was the disciplinarian. (T 249). After being disciplined for having her ears pierced, T.C. sent a text her mother and T.C.'s mother wanted T.C. to leave Jackson's home. (T 242-43).

**Verdict/Sentencing**

The jury found Petitioner guilty as charged. The trial court adjudicated him guilty and sentenced him to fifteen years in prison for count 1 and to seven years in prison for counts 2 and 3, to run consecutive to the sentence imposed under count 1. (DE# 9, Ex. 9).

**Direct Appeal**

Petitioner filed a direct appeal in the Fourth District Court of Appeal ("Fourth DCA") where he argued that (1) the trial court erred in restricting cross-examination of the victim pursuant to the rape shield law, and (2) trial counsel provided

ineffective assistance in failing to object to evidence that the victim attempted suicide. (DE# 9, Ex. 11, Initial Brief).

Petitioner moved to fire his court-appointed appellate counsel (DE# 9, Ex. 12). Counsel filed a motion to withdraw based on Petitioner's motion (DE# 9, Ex. 13), which the Fourth DCA granted (DE# 9-1 p.75). Petitioner then filed a *pro se* initial brief alleging trial counsel rendered ineffective assistance by failing to object to numerous matters and failing to move to dismiss based on a speedy trial violation (DE# 9, Ex. 15).  In a written opinion, the Fourth DCA affirmed the conviction and sentence. *Cooper v. State*, 137 So. 3d 530 (Fla. 4th DCA 2014). Mandate issued on June 13, 2014. (DE# 9, Ex. 21).

### Rule 3.850 Post-Conviction Motion Proceedings

On May 7, 2015, Petitioner filed a post-conviction motion pursuant to Rule 3.850 in which he alleged ineffective assistance of trial counsel. (DE# 9, Ex. 22). The court denied the motion without prejudice as legally insufficient. (DE# 9, Ex. 24). Petitioner filed an amended Rule 3.850 motion in which he alleged that trial counsel provided ineffective assistance in (1a) failing to call witnesses, Janee Haycock and Tonysha Hudson, to impeach the credibility of the victim, (1b) failing to effectively cross-examine the victim and (2) failing to object and preserve for appeal the state's invocation of the rape shield law. (DE# 9, Ex. 25). The state filed a response. (DE# 9, Ex. 26). The trial court issued an order denying the amended

motion for post-conviction relief and incorporating the state's response. (DE# 9, Ex. 27).

Petitioner appealed. (DE# 9, Ex. 30). In his *pro se* initial brief, Petitioner argued that the trial court erred in summarily denying each ground raised in the amended motion. (DE# 9, Ex. 31). On March 23, 2017, the Fourth DCA *per curiam* affirmed without written opinion in *Cooper v. State*, 224 So.3d 233 (Fla. 4th DCA 2017). (DE# 9, Ex. 32). Petitioner filed a motion for rehearing, which the Fourth DCA denied. (DE# 9, Ex. 33, 34). Mandate issued June 2, 2017. (DE# 9, Ex. 25).

### § 2254 Petition

Petitioner next came to this court filing the instant petition pursuant to 2254. (DE# 1). The state filed a response to this court's order to show cause, with supporting exhibits. (DE# 8, 9, 10). The state concedes the petition is timely, but argues that Petitioner did not properly exhaust all claims raised. (DE# 8:5-8). Petitioner filed a reply. (DE# 11).

### III.  Threshold Issues

### A. Exhaustion

The Respondent argues that **claims 5, 6, 8, and 9,** as well as each of Petitioner's ineffective assistance of appellate counsel claims, are unexhausted and procedurally defaulted from federal habeas review. (DE#12:20). In addressing the issue of exhaustion and procedural default, a court must determine whether the claim

9

was raised in the state court proceedings; and if not, whether it was procedurally defaulted from review. The Respondent correctly points out that Petitioner raises these claims for the first time in the instant proceedings. (*Id.*). Petitioner does not expressly dispute that he failed to raise these claims in state court, but argues that a review of the claims is warranted pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). (DE# 1:35).

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging a state conviction. *See* 28 U.S.C. § 2254(b), (c). To properly exhaust state remedies, a petitioner must fairly present every issue raised in his or her federal petition to the state's highest court, either on direct appeal or on collateral review. *Preston v. Sec'y, Fla. Dep't of Corr's*, 785 F.3d 449, 456–59 (11th Cir. 2015). *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

Exhaustion is not satisfied "merely" if the petitioner presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)(citation omitted). A petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Id*. For example, "a litigant wishing to raise a federal issue can easily indicate the federal law basis

10

for his [or her] claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin,* 541 U.S. at 32; *McNair v. Campbell,* 416 F.3d 1291, 1302-1303 (11th Cir. 2005).

To circumvent the exhaustion requirement, Petitioner must establish that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [her] rights." 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981). The merits of the exhaustion argument shall be addressed in greater detail below. However, the Respondent correctly argues that Petitioner raises **claims 5, 6, 8, and 9**, as well as the ineffective assistance of appellate counsel claims, for the first time in these proceedings.

When reviewing a federal habeas petition filed by a state prisoner, federal courts may "skip over the procedural bar issues" to deny on the merits. *See, e.g.*, *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011). AEDPA's statutory framework provides this court with authority to do so. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust [state remedies.]"). Furthermore, even before AEDPA's enactment, judicial economy sometimes warranted reaching the merits when they were "easily resolvable against the habeas

11

petitioner." *See, e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

Here, regardless of whether Petitioner's claims are procedurally barred, Petitioner clearly cannot prevail on the merits of claims 5, 6, 8, and 9, as well as the ineffective assistance of appellate counsel claims. *See Valle v. Sec'y, Fla. Dep't of Corr.*, 459 F.3d 1206, 1213 (11th Cir. 2006).

## IV. <u>Governing Legal Principles</u>

"The purpose of the Antiterrorism and Death Penalty Act ("AEDPA") is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford*, 818 F.3d at 642 (*quoting Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Ledford*, 818 F.3d at 642 (*quoting Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which

warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). *See also Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits," in the state forum, §2254(d) prohibits relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved an unreasonable application of, clearly established Federal law,[2] as determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97-98. *See also Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an **erroneous factual determination**. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 2298 (2017).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and

---

[2] "Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 572 U.S. at 419; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (*citing Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (*quoting Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102. As applied here, to the extent Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

Petitioner alleges **ineffective assistance of counsel**. (DE#1). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684−85 (1984). When assessing counsel's performance under *Strickland*, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that: (1) his or her counsel's **performance was deficient**, i.e., the performance fell below an objective standard of reasonableness; and, (2) he or she suffered **prejudice** because of that deficiency. *Strickland*, 466 U.S. at 687-88.

To establish **deficient performance**, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The review of counsel's performance should focus

on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776 (1987)).

Regarding the **prejudice** component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Furthermore, a § 2254 Petitioner must provide factual support for his or her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

## V. <u>Discussion</u>

### Claim 1

Under claim 1, Petitioner alleges ineffective assistance of counsel for failing

to call six exculpatory witnesses: Janee Maycock, Tonysha Hudson, Jennifer Schmidt, Richard Barnes, Paul Andres, and Tammy German. (DE# 1:4-5, 12-19).

Federal habeas corpus petitioners asserting claims of ineffective assistance, based on counsel's failure to call a witness (either a lay witness or an expert witness), must satisfy the prejudice prong of *Strickland* by (1) naming the witness, (2) demonstrating the witness was available to testify and would have done so, (3) setting out the content of the witness's proposed testimony, and (4) showing the testimony would have been favorable to a particular defense. *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). *See also Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014) (holding federal habeas petitioner who failed to show an uncalled witness was available to testify at the time of trial failed to satisfy prejudice prong of *Strickland*) *cert. den'd*, 135 S. Ct. 1563 (2015).

Moreover, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Of course, a petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).

**Janee Maycock and Tonysha Hudson**.  During her direct examination at

16

trial, the victim testified that she told Maycock and Hudson about Petitioner's actions. (T 158). In his amended Rule 3.850 motion, Petitioner asserted that T.C. told Maycock and Hudson that Petitioner molested her at a sweet 16 party and that Maycock claimed T.C. told her the molestation occurred every day. (DE#9:Ex.25). Prior to trial, defense counsel deposed these two individuals. (DE#1:17). Afterwards, counsel informed Petitioner that they provided inconsistent testimony throughout the deposition. (*Id.*). Defense counsel promised to call them at trial to impeach the victim's credibility. (*Id.*). Counsel ultimately failed to do so. (*Id.*).

Petitioner named the witnesses but did not demonstrate that they were available to testify and would have done so. Petitioner did outline the proposed testimony, specifically, that the testimony of the witnesses would have impeached the victim's claim that Petitioner molested her only three times when Petitioner told Maycock and Hudson that Petitioner molested her a fourth time at a sweet sixteen party and told Maycock that Petitioner molested her every day. Petitioner has clearly failed to show that this testimony would have been favorable to his defense. Even assuming it would render the victim's testimony that Petitioner only molested her three times less credible, the testimony would do so by informing the jury of *additional* instances of molestation. The proposed testimony is highly prejudicial to the Petitioner, outweighing any impeachment value. Defense counsel clearly made a strategic decision, which this court should not second guess. *See Waters v.*

*Thomas, supra*. This reasonable strategic decision did not constitute ineffective assistance of counsel.

**Jennifer Schmidt, Richard Barnes, and Paul Andres**. These three law enforcement individuals investigated Petitioner's case. Petitioner claims trial counsel should have called them to show inconsistencies in T.C.'s statements to detectives. (DE#1:16,18). Petitioner fails to describe these inconsistencies. T.C. gave a statement to the police on October 9, 2009, which the state attached to its response to Petitioner's amended Rule 3.850 motion. (DE#9-1:330-51). T.C.'s statement is consistent with T.C.'s trial testimony. (*Id.*). She described her move to Jackson's house and the three incidents involving Petitioner. (*Id.*).

Petitioner alleges that "in the police report, the detectives made a statement that neither the alleged victim nor the victim's two friends' accounts of the incidents matches," and, "their stories are riddled with contradictions." (DE#1:18). He does not provide a copy of this report, nor does he identify where in the record the officers made this statement.

Even assuming the officers believed the stories were inconsistent, defense counsel was prohibited from eliciting this fact from the officers at trial. The Florida Supreme Court has held that it is "harmful for a police witness to give his opinion of a witnesses' [sic] credibility because of the great weight afforded an officer's testimony." *Seibert v. State*, 923 So.2d 460, 472 (Fla. 2006) (*quoting Page v. State*,

733 So.2d 1079, 1081 (Fla. 4th DCA 1999)).

Petitioner names the witnesses, but does not demonstrate they would have been available and willing to testify. He provides this court with the contents of the proposed testimony; however, this testimony would have been inadmissible at trial. *See Seibert*, *supra*. Defense counsel's strategic decision not to call law enforcement officers where they could not testify as desired by Petitioner did not constitute ineffective assistance of counsel.

**Tammy German** (Victim's Mother). Petitioner argues that defense counsel should have questioned German at trial regarding her motives for pressing charges and what T.C. told her about Petitioner. (DE#1:18-19).

Petitioner fails to allege that German would have been willing and able to testify. The content of the proposed testimony provided by Petitioner constitutes inadmissible hearsay evidence. *See Fla. Stat.* § 90.801(1)(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *Fla. Stat.* § 90.802 ("except as provided by statute, hearsay evidence is inadmissible."). Furthermore, the State did not call German to testify. Any evidence of German's motives might have been admissible impeachment evidence if she was called by the state to testify, but she was not. *Morton v. State*, 689 So. 2d 259 (Fla. 1997). Petitioner cannot establish ineffective assistance of counsel under *Strickland*.

**Claim 2**

Under claim 2, Petitioner alleges ineffective assistance of counsel for failing to object to the state's invocation of the rape shield law, *Fla. Stat.* § 794.022(3). (DE#1:6, 20-25).

Prior to trial, the state moved *in limine* to exclude references to T.C.'s prior or subsequent sexual behavior or romantic relationships. (DE#9, Ex. 6). Defense counsel argued that he should be allowed to admit evidence that T.C. lied to detectives about her past sexual history to impeach T.C. at trial. The trial court held the rape shield law excluded this evidence without qualification. (T 6-13). Petitioner's trial counsel did not object.

On direct appeal, Petitioner's counsel argued that the trial court's decision constituted fundamental error because the pre-2016 version of *Fla. Stat.* § 794.022(3) applied only to sexual battery prosecutions under *Fla. Stat.* § 794.011, and not lewd and lascivious prosecutions under *Fla. Stat.* § 800.04. (DE# 10-1 p.56-57). The Fourth DCA concluded that the court erred in excluding the testimony under the pre-2016 version of the rape shield statute. *Cooper v. State*, 137 So. 3d 530, 531 (Fla. 4th DCA 2014). However, the court held that the error was not fundamental and, thus, did not warrant reversal. *Id.*

Petitioner argues that trial counsel's failure to preserve the issue constituted deficient performance and caused prejudice because Petitioner could not impeach

T.C. regarding whether she previously had sex with boyfriends. (DE# 1:22-23).

Trial counsel's failure to object arguably constituted deficient performance, as the Fourth DCA noted that the objection was not without merit. However, Petitioner cannot establish prejudice. Impeaching T.C. with the fact that she previously had sex with boyfriends, which Petitioner claims to have learned from other individuals, would not have been permitted under Florida law.

"The Constitution guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Jordan v. Warden, Lebanon Correctional Inst.*, 675 F.3d 586, 594 (6th Cir. 2012) (*quoting Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

Florida law is clear that "relevant evidence is evidence tending to prove or disprove a material fact." *Fla. Stat.* § 90.401. "Any party, including the party calling the witness, may attack the credibility of a witness by . . . [p]roof by other witnesses that material facts are not as testified to by the witness being impeached." *Fla. Stat.* § 90.608(5). "In determining if the issue is collateral so that collateral impeachment by extrinsic evidence is disallowed, the question to be posed is whether the impeaching evidence would be admissible for any purpose other than contradiction." *Correia v. State*, 654 So.2d 952, 954 (Fla. 4th DCA 1995)(*citing Dempsey v. Shell Oil Co.*, 589 So.2d 373, 377 (Fla. 4th DCA 1991)). "Two types of evidence pass this

test: 1) evidence which is relevant to independently prove a material fact or issue; and 2) evidence which would discredit a witness by pointing out the witness's bias, corruption or lack of competency." *Id.* (*citing Dempsey*, 589 So.2d at 377). "It is well-established that if a party cross-examines a witness concerning a collateral matter, the cross-examiner must 'take' the answer, is bound by it, and may not subsequently impeach the witness by introducing extrinsic evidence to contradict the witness on that point." *Id.* at 955 (*citing Caruso v. State*, 645 So.2d 389 (Fla. 1994)). However, "[i]n Florida, an exception to the so-called collateral-matter rule exists where the collateral extrinsic evidence sought to be introduced concerns matters testified to by the witness on direct examination" because the witness is said to have opened the door. *Mills v. State*, 681 So.2d 878, 880 (Fla. 3d DCA 1996)(*citing Segarra v. Mellerson*, 675 So.2d 980, 983 (Fla. 3d DCA 1996)).

Here, if T.C. denied prior sexual conduct during defense counsel's cross-examination, counsel would not have been able to impeach her with evidence that she had engaged in such conduct. Defense counsel made a strategic decision to impeach T.C. in other ways. Specifically, with the positive letter T.C. wrote to the Petitioner, T.C.'s mental health issues, and Watania's testimony that T.C. had issues telling the truth and T.C. never told Watania about the abuse. Petitioner cannot establish a "reasonable probability that the verdict [otherwise] would have been different" had trial counsel been able to introduce evidence of T.C.'s past sexual

conduct. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

**Claim 3**

Under claim 3, Petitioner alleges ineffective assistance of counsel for failing to object when the prosecutor informed the jury that the victim's attempted suicide was in response to Petitioner's actions. (DE#1:7, 25-29). Relying on *Johnson v. State*, 40 So. 3d 883 (Fla. 4th DCA 2010), Petitioner argues the testimony was inadmissible under *Fla. Stat.* § 90.403.[3]

In *Johnson*, the victim testified that as a result of her sexual relationship with the defendant, she developed depression and tried to kill herself twice. *Johnson*, 40 So. 3d at 885. The Fourth DCA held that the testimony was marginally probative in corroborating the victim's testimony, and was not relevant to the truthfulness of the victim. *Id.* As a result, the probative value was substantially outweighed by the danger of unfair prejudice. *Id.* at 887.

Several more recent cases out of the Fourth DCA have held, however, that "the behavioral changes of a victim following the alleged sexual abuse is probative of whether the sexual abuse occurred." *Scott v. State*, 218 So. 3d 476, 478 (Fla. 3d DCA 2017). *See also Petruschke v. State*, 125 So. 3d 274, 281 (Fla. 4th DCA 2013) (testimony of victim's parents that victim "wet his bed more often, woke up

---

[3] "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." *Fla. Stat.* § 90.403.

crying with terror, and began counseling" after the alleged abuse was relevant and admissible to prove that the abuse actually occurred).

Plaintiff raised this issue on direct appeal, as an ineffective assistance of counsel claim. The Fourth DCA "conclude[d] that no ineffective assistance [wa]s apparent on the face of the appellate record." *Cooper*, 137 So. 3d at 532 (*citing Mansfield v. State*, 758 So. 2d 636, 642 (Fla. 2000); *Hills v. State*, 78 So.3d 648, 652–53 (Fla. 4th DCA 2012)). The Fourth DCA affirmed "without prejudice to appellant raising this issue in a postconviction motion." *Id.* Petitioner did not raise this issue in the Rule 3.850 proceedings.

The Supreme Court has held that habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Evidence of suicidal thoughts or actions can be admissible as probative evidence of whether the sexual abuse occurred. *See Scott*, *supra*. Trial counsel's failure to object did not constitute ineffective assistance of counsel which was apparent on the face of the record. As in *Scott*, the fact that T.C. became suicidal after the abuse was a relevant behavioral change that tended to corroborate her testimony. Rather than objecting, it appears on this record that defense counsel made a strategic decision to cross-examine T.C. about her attempt to commit suicide in an effort to portray her as troubled and, thus, not a credible witness. *See* (T 262).   The Fourth DCA's rejection of this issue was not an

unreasonable application of *Strickland* based on the record as it existed on direct appeal. Petitioner is not entitled to relief on this claim.

**Claim 4**

Under claim 4, Petitioner alleges the trial court erred in preventing trial counsel from cross-examining T.C. regarding her alleged lies to police about her prior sexual experience. (DE#1:8, 29-34). Petitioner argues this was contrary to Supreme Court precedent, specifically, *California v. Green*, 399 U.S. 149, 152 (1970) and *Crawford v. Washington*, 541 U.S. 36 (2004).

In *Crawford*, the Supreme Court held the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. *Crawford* involved out-of-court statements offered as substantive evidence, and held such statements cannot be introduced as substantive evidence when there was no opportunity for cross-examination.

Here, T.C. testified and her statements to law enforcement regarding her prior sexual experience were not introduced into evidence, so there is no *Crawford* violation. To the extent Petitioner is again arguing that he had a Sixth Amendment right to cross-examine T.C. with her statement to police, this claim was raised and rejected under claim 2.

## Claim 5

Under claim 5, Petitioner alleges ineffective assistance of trial counsel for failing to introduce a letter written by the victim. (DE#1:34-36).During the trial, defense counsel attempted to introduce the letter written by the victim to the Petitioner. (T 191). The state objected, arguing that the defense failed to share the letter with the state during discovery. (T 178). The following exchange took place outside the presence of the jury where Petitioner's counsel vigorously argued that the letter should be admitted:

> **Prosecutor**: Ask for a *Richardson*[4] hearing discovery violation. I've never seen this before and it definitely prejudices my case.
>
> **Defense Counsel**: Your Honor, most respectfully. The state is not entitled to a *Richardson* hearing on impeachment evidence. I am required to disclose statements that my client makes, which I am going to put that witness on the stand. The rule is clear, if you have impeachment evidence, you don't need to disclose that to the state. The rule didn't provide for that. Your Honor, take a moment. Real impeachment.
>
> **The Court**: This may not -- this is evidence, discoverable, and you have the obligation.
>
> **Defense Counsel**: No, Your Honor.
>
> **The Court**: This is a letter. I don't know what I'm holding.

---

[4]In *Richardson v. State*, 246 So.2d 771 (Fla.1971), the Florida Supreme Court set forth a mandatory two-step procedure in the event of a discovery violation. First, the trial court must determine whether the state violated the discovery rules. *Id.* at 775. Second, if a violation occurred, the court must then assess "whether the state's violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial." *Id.* (*quoting Ramirez v. State*, 241 So.2d 744, 747 (Fla. 4th DCA 1970))

**Defense Counsel**: This is a letter that she wrote after Christmas telling my client and his wife how wonderful they are and also thanking [Petitioner] for all the help that he gave here.

**The Court**: Why didn't this -- this is not signed or anything. But, if this is a letter by her, why isn't [it] discoverable and why didn't you disclose it? Why isn't it subject to *Richardson*?

**Defense Counsel**: Impeachment. The rulings are clear. If you have evidence of impeachment of a witness, you don't have to give that to the state. They are –

**The Court**: There is a difference, you want this in evidence? There is a difference between impeaching a witness and something that you are marking for purposes of jury trial and you are going to ask questions about.

**Defense Counsel**: Yes.

**The Court**: All right. Let's take a break.

* * *

**The Court**: First of all, I don't look at this as a letter. It's not signed or anything. I don't know who wrote this letter or these notes. There is no name to it.

**Defense Counsel**: It's clear . . . who wrote it. It was written by –

**The Court**: I'm saying there's nothing on here.

**Defense Counsel**: Yes, Your Honor.

**The Court**: It's not signed, it's not dated or anything. So -- first of all, it's not a letter signed by anyone. I just need to know, since you asked for it being marked, why wasn't it provided to the State?

**Defense Counsel**: This is a writing that was made at some point after Christmas when she left my client's residence, because in it, it says that

it was made after Christmas. Because she mentions Christmas in there and she mentions just leaving the house and thanking my client. And then on the back of it she specifically says: And I want to thank Petitioner for all the things that he did for me. And then she also talks about how she was disciplined, but she understands that it was necessary and so forth. This is a completely -- this is an impeachment.

**The Court**: I agree; however, there is a document. You can impeach on anything. When you are saying this is a document that it's a letter that is not authenticated or anything, it's not dated and even in this writing, it doesn't give a year . . . . It's not dated and it's not signed.

**Defense Counsel**: Well, it's obviously written after she left their home. Because that's what it says.

**The Court**: Well, you are assuming that I know that. I don't know, "dear cousin." I don't even know who cousin is. This is not addressed to anyone specific and it doesn't -- it's not dated. That's not an issue right now. You can impeach, but you are asking the court for this, which is a piece of paper at this point, not dated, unsigned, to come into evidence –

**Defense Counsel**: No, no, I'll just have it marked.

**The Court**: -- for a reason.

**Defense Counsel**: I'm going to have it marked and have it identified by this witness.

**The Court**: You might. If you get over the hump, you got to get over the hump.

**Defense Counsel**: If the court, the clear plain meaning of this particular document which is clearly written by the victim, alleged victim, is written some time after Christmas which is after the time she alleges my client did these horrible things to her. And in that particular letter, she thanks my client and she thanks specifically Petitioner for all the wonderful things that he did for her. . . . [I]t undermines the state's case. Now, the question is –

28

**The Court**: What is your . . . impeachment? That's what you are calling it?

**Defense Counsel**: Yes.

**The Court**: Hold it. Impeachment.

**Defense Counsel**: Yes.

**The Court**: What is your pending question to her?

**Defense Counsel**: Well, first, if the court allows, I was going to have the item marked and have her look at it.

**The Court**: How? There, that's the problem. What is the pending question? You have to impeach somebody on something. . . . What is your concern that you are impeaching her on? What is her prior testimony that you are actually attacking? . . . I don't know her response to anything that you said that will elicit a response to this. What is it that you are impeaching her on?

**Defense Counsel**: I'm impeaching her on the fact that she claims that my client sexually molested her. That's not something that's a nice thing for somebody to do. So, when somebody writes . . . "I also want to thank Petitioner for going out of his way and supporting me and trying to talk to me when I needed someone to talk to. And I thank" the I can't read this word "for sharing their" something "with me even though they don't have to and if I become successful, I will remember to include y'all in everything, anything good that happens." It's clear to me, Your Honor, that one does not write a letter addressing it to my client's family, and to him specifically, saying how wonderful she was treated by the man who just three times sexually assaulted [her]. Now, that is about as clear an impeachment as I have ever seen. And according to the rules as I understand them, if I wrong then obviously I'll have to take the consequences. But the rules say that the state is entitled to complete discovery.

**The Court**: That's a different issue.

**Defense Counsel**: You're not even there yet.

**The Court**: I'm not even there. I'm going on what you told the court. I don't see the impeachment. I don't see -- you have to impeach somebody on testimony and I don't see it.

**Defense Counsel**: Well, I can certainly lay the predicate for this.

**The Court**: There's nothing to suggest -- first of all, the letter can't come in because it's not a letter. . . . Number two, before we even get to that, I have to have a proper foundation laid by the defense, but the state is still entitled to notice. All right. State?

**Prosecutor**: Judge, [Fla. R. Crim. P. 3.220(d)(1)(B)(i)], which actually I think is one, defendant's reciprocal discovery obligation. A statement of any person listed in [rule 3.220(d)(1)(A)], which would be [the victim] other than the defendant. Assuming that there was a statement made –

**The Court**: The rule is clear. Reciprocal. I need case law . . . Court is in recess. The rule is clear, I need case law by the defense.

(T 178-85). When the parties returned, the discussion continued as follows:

**Defense Counsel**: [U]nder [Rule 3.220(d)(1)], If the defendant elects to participate in discovery, which we did, it says within 15 days after receipt by the defendant of the Discovery Exhibit furnished by the prosecutor, the defendant shall furnish to the prosecutor a written list of names and addresses of all witnesses whom the defendant expects to call as witnesses at the trial. . . . under [Rule 3.220(d)(1)(B)], within 15 days after receipt by the prosecutor's Discovery Exhibit, the defendant shall serve a witness Discovery Exhibit which shall disclose to and permit the prosecutor to inspect, copy, test, and photograph the following materials. The statement of any person listed in subdivision (d)(1)(A), that would be the prosecutor's list of witnesses not the defense.

Other than that of the defendant, reports or statements of experts made in connection with the particular case, including results and so forth. Then it says [Rule 3.220(d)(1)(B)(iii)], any tangible papers or objects that the defendant intends to use in the hearing or trial. Now, it's my

understanding that that rule only applies to statements or documents -- it's my understanding that the defense obligation is to provide the state with a list of witnesses and statements that the defendant's witnesses provide to defense counsel, which is exactly the same obligation that the State has.

They're obliged to give me the same written statements or oral statements of any witnesses they would expect. Now, if I have a scientific evidence or something like that, reciprocal discovery of course I have to give them the report. But other than that my understanding is the defendant does not have any obligation to provide the state with impeachment evidence of their witnesses.

. . . .

**The Court**: There are no cases that I'm aware of that support your proposition under rule 3.220. The document is not coming in as impeachment. There's no foundation being laid for impeachment purposes. This is a statement impeachment and there's no foundation in terms of either prior consistent statement for that to come in for impeachment purposes. However, that does not prevent or preclude the defendant from asking questions regarding this victim's feelings.

And since we have no date or time or signature on the document, the defense obviously can ask questions from the document itself not having to come in, such that, some foundation may be laid regarding what she may have said when I have no clue. But the defense is not precluded from -- you can't read the document and the document is not corning in, but certainly, you can ask questions of this particular victim as to whether or not she has communicated with the defendant. I don't know who cousin is. Obviously, this is dear cousin. It's not addressed to Mr. Cooper and it's not addressed to anyone actually. . . .

The document is not corning in, but you can ask questions regarding communications with regard to this particular case. So, this document would not come into evidence. Let's bring the witness in.

**Defense Counsel**: Before we do that, may I discuss something with you concerning—

**The Court**: Yes.

**Defense Counsel**: First of all, for appellate purposes in case this is an issue, I think that I should be able to mark this item for identification and obviously put in the record. I'm sure the court won't object to that.

**The Court**: That can be done at any time.

**Defense Counsel**: Number two, I think that based on what the court said, I should be able to -- let's say if I ask her: Did you write a letter to my client thanking my client for all the work that he did for you?

**The Court**: Why would you ask that when, again, the discovery rules have not been dealt with. In other words, why would you even say, did you write a letter? Why don't you just ask her about the contents as I just stated. I'm going to allow you to ask about the contents, but certainly don't bring up the letter. This is not in my opinion a letter. If you have the envelope and that sort of thing that could help the court, please do. But it's not signed, it's not printed, there's no sincerely, there's no salutations, there's no date, there's no address to or anything. It could be part of a diary. I don't know.

**Defense Counsel**: Could we, out of the presence of the jury, voir dire her on this?

**The Court**: Actually, I'm not going to allow the document, but I'm going to allow you to ask questions in front of this jury. I have no case law, I'm looking at the rules. I feel it's a discovery violation.

**Defense Counsel**: Your Honor, I have to respect your opinion and I'll go forward based on your ruling.

**The Court**: All right. I'm not precluding you from asking your questions. This can be marked, but it's not coming into evidence.

(T 185-89).

When the trial resumed, Petitioner's trial counsel asked the victim if she "ever, in any way, communicate with either [Petitioner] or his wife concerning how you

felt about them?" (T 191). The victim responded in the affirmative, explaining that she had written a letter. (*Id.*). The victim did not recall the exact contents of the letter, but wrote the letter in hopes that she could stay with Jackson because she did not want to go home to her mother. (T 192). The victim stated that she thanked Petitioner in the letter, but further stated her cousin had told her to do so. (T 198-99). Outside the presence of the jury, the victim recognized the letter and stated her cousin helped her write the letter. (T 195-197).

Here, Petitioner argues that the letter was exculpatory and introducing the letter "would have subjected the State's case to the adversarial testimony process." (DE# 1:35-36). Petitioner did not provide this court with a copy of the letter itself. Because he did not raise this issue in his direct appeal or during the Rule 3.850 proceedings, the letter was not included in the state record. Because the state court declined to introduce the letter at trial, it was not made part of the trial record itself. As a result, this court is unable to ascertain whether the letter was in fact exculpatory.

The burden is on a petitioner to establish a constitutional violation in a habeas corpus proceeding. *Scruggs v. Williams*, 903 F.3d 1430, 1435 (11th Cir. 1990); *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

To the extent Petitioner argues that his trial counsel was ineffective, the record

refutes his claim. Trial counsel attempted to introduce the letter, but the trial court simply rejected counsel's argument. The record contains no evidence that trial counsel's performance was deficient. Furthermore, the exculpatory aspect of the letter appears to be that the victim thanked Petitioner for allowing her to live with him and Jackson. The jury heard this fact through the victim's testimony. As a result, the letter itself was merely duplicative of evidence introduced at trial. Defense counsel was not ineffective in failing to overcome the state's objection to the introduction of this letter.

**Claim 6**

Under claim 6, Petitioner alleges ineffective assistance of counsel for failing to request a statement of particulars with respect to the charging document and failing to request an alibi jury instruction (DE#1:37-42). Petitioner claims there were discrepancies during the victim's testimony regarding the dates on which the alleged the abuse occurred. Petitioner further argues that with more definite dates, he would have been able to put forth an alibi defense. (*Id.*).

Florida Rule of Criminal Procedure 3.140(d)(3) requires that each count of an information "shall contain allegations stating as definitely as possible the time and place of the commission of the offense charged . . . ." However, an indictment or information need not "state the exact date of the offense if such date is not known." *Lightbourne v. State*, 438 So. 2d 380, 384 (Fla. 1983). The charging document "in

such cases will be deemed sufficient if it is alleged that the offense occurred within stated specific time limits." *Id.*

In *Dell'Orfano v. State*, 616 So. 2d 33 (Fla. 1993), the Florida Supreme Court noted that addressing whether a statement of particulars must be provided in child abuse cases, where the dates of the offenses are not specified in detail, implicates "two conflicting public policy concerns." *Id.* at 35. First, the "strong interest in eliminating the sexual abuse of children through vigorous enforcement of child-abuse laws" and second, the defendant's "strong interest in being apprised of the charges against them such that they can prepare an adequate defense." *Id. See also Ramos v. State*, 75 So. 3d 1277, 1283 (Fla. 4th DCA 2011).

The information alleged that the sexual battery and molestation took place "on or between the 22nd day of September, 2008, and the 27th day of November, 2008." (DE#9, Ex. 3). The victim testified at trial that the three incidents took place when she was living with Petitioner beginning in the fall through Christmas of 2008. (T 333-38, 348). In contrast, Petitioner has not shown that a two-month time frame was prejudicial. Although he claims he could have presented an alibi defense, he fails to explain how an alibi defense would exclude a substantial portion of the charged time period. *Dell'Orfano*, 616 So. 2d at 35 n. 5 ("The fact that a defendant may advance an alibi of short duration will not necessarily be dispositive where it is clear the defendant had access to the victim throughout the time periods in question, such as

where both resided in the same house at all relevant times.").

Regarding a request for an alibi jury instruction, "[a] criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is any evidence to support it, no matter how weak or flimsy." *Quick v. State*, 46 So. 3d 1159, 1160 (Fla. 4th DCA 2010), but a trial court is not required to give an instruction "where there is no nexus between the evidence in the record and the requested instruction." *Mora v. State*, 814 So. 2d 322, 330 (Fla. 2002). Here, Petitioner did not present an alibi defense, and he does not set forth any facts to demonstrate what alibi defense trial counsel should have presented. Thus, trial counsel was not ineffective for failing to request an alibi jury instruction.

**Claim 7**

Under claim 7, Petitioner alleges ineffective assistance of counsel for failing to introduce the victim's school records (DE#1:42-44). Petitioner argues these records would be exculpatory because T.C. alleged the incidents occurred when she was being homeschooled, while the records show she was enrolled in school. (*Id.*). Petitioner raised this argument in his amended Rule 3.850 motion. (DE#9, Ex. 25:8).

Petitioner's claim is refuted by the record. Whether Petitioner was homeschooled or attending classes was not relevant to the charges. T.C. testified the first incident occurred right after she came home from school with her ears pierced (T 153). The second incident occurred at "nighttime and it was time for us to go to

36

bed." (T 155). The third incident occurred when Petitioner drove to the bank with T.C. in the car. (T 156).

It is clear the victim's school records would not have been exculpatory, however, they arguably could impeach the victim since she claimed that she was homeschooled for part of the time she was living at Jackson's home. However, defense counsel called Watania Jackson who testified that T.C. was never homeschooled (T 241). As a result, trial counsel was able to impeach T.C. on this point without the school records. Thus, trial counsel's failure to introduce the school records did not constitute deficient performance or result in prejudice under *Strickland*.

**Claim 8**

Under claim 8, Petitioner alleges ineffective assistance of counsel for advising Petitioner not to testify at trial (DE#1:44-46).

It is well settled that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987); *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (*en banc*). This right is personal to the defendant and cannot be waived by the trial court or defense counsel. *Id.* The burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, and is therefore a component of effective assistance of counsel. *Teague*, 953 at 1533.

The *Teague* court reasoned that an attorney's performance would be deficient under the first prong of the *Strickland* test if counsel refused to accept the defendant's decision to testify and refused to call him to the stand to testify or, alternatively, where counsel never informed the defendant of his right to testify as the ultimate decision belonged to the defendant alone. *Teague*, 953 F.2d at 1532. In *Teague*, 953 F.2d at 1535, the Eleventh Circuit found no ineffective assistance of counsel because counsel advised the defendant of his right to testify, advised him that he should not exercise that right, and the defendant did not protest.

Here, Petitioner had a prior conviction for two counts of lewd and lascivious battery (T 319). It is likely that his counsel could have advised him not to testify in order to prevent the jury from learning of the prior conviction. He cannot show that counsel provided deficient performance for advising him not to take the stand. *See Jones v. Sec'y, Dept. of Corr.*, 487 Fed. Appx. 563, 567 (11th Cir. 2012).

Moreover, Petitioner cannot demonstrate prejudice, since the record demonstrates he did not rely on counsel's advice, but made his own decision not to testify. At trial, the following colloquy occurred between Petitioner and the trial court:

> **The Court**: Okay, now, Mr. Cooper, this is your trial, this is your day in court. Your lawyer just told me that you are not going to testify, is that your decision, sir?
>
> **Petitioner**: Yes, Your Honor.

**The Court**: Do you need more time to talk to your lawyer?

**Petitioner**: No, Your Honor.

**The Court**: Do you understand that irrespective of what your lawyer says or what this court may say, the ultimate decision rests with you? It is your decision, you have to live with it. Do you understand?

**Petitioner**: Yes, Your Honor.

**The Court**: Your decision to not testify means that obviously, this jury will not hear from you, your side of the story. They will hear from your lawyer, but you will not be telling them. Do you understand that?

**Petitioner**: Yes, Your Honor.

**The Court**: And, of course, you have the right to testify and if you do, you will be subject to direct examination by your lawyer and also cross-examination by the State, and you have witness cross-examination by your lawyer.  Your decision to not testify, is that decision freely, voluntarily, and knowingly done by you?

**Petitioner**: Yes, Your Honor.

**The Court**: Is it in your best interests to not testify?

**Petitioner**: Yes, Your Honor.

**The Court**: And has anyone forced you, coerced you, or promised you anything to entice you to not testify in this case?

**Petitioner**: No, Your Honor.

**The Court**: Are you sure that's your decision?

**Petitioner**: Yes, Your Honor.

**The Court**: All right. Thank you, sir. Are you satisfied with the services of your lawyer, sir?

**Petitioner**: Yes, Your Honor.

(T 234-35).

As is evident from the above, even if counsel was deficient, Petitioner cannot satisfy the prejudice prong under *Strickland*. The trial court conducted a thorough colloquy with Petitioner, explaining the consequences of testifying. Petitioner affirmed that he understood the court's representations and further indicated that he was voluntarily choosing not to testify. Accordingly, the record demonstrates that Petitioner's decision was voluntary and knowingly made. Petitioner has not pointed to any specific way in which counsel's failure to more thoroughly advise him regarding his decision not to take the stand would have affected the outcome of the trial. As a result, Petitioner is not entitled to relief under this ground.

**Claim 9**

Under claim 9, Petitioner alleges ineffective assistance of counsel for failing to object to evidence about a lie detector test (DE#1:46–49). The record reflects only one short reference to a lie detector test.

On the first day of trial, before jury selection, the following exchange took place:

**The Court**: Did you do a polygraph in this case?

**Prosecutor**: Yes.

(T 5). No further mention of the polygraph or any polygraph evidence was made

40

during Petitioner's criminal trial proceedings. Counsel's failure to object to the this exchange prior to trial cannot constitute deficient performance or prejudice under *Strickland*. Petitioner is not entitled to relief.

### Ineffective assistance of appellate counsel

Under claims 5 through 9, Petitioner also argues that appellate counsel was ineffective for failing to argue that trial counsel was ineffective in failing to raise each respective issue. When establishing ineffective assistance of appellate counsel, the petitioner must demonstrate deficient performance and prejudice. *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009)(*citing Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)); *Smith v. Robbins*, 528 U.S. 259, 285–86, (2000); *Roe v. Flores–Ortega*, 528 U.S. 470, 476–77 (2000). If the court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal. If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice. *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001). *See also Digsby v. McNeil*, 627 F.3d 823, 831 (11th Cir. 2010). Non-meritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel. *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1144–45 (11th Cir. 2005).

In this case, the issues raised under claims 5 through 9 were non-meritorious. Trial counsel was not ineffective in failing to raise meritless claims. *Chandler*, 240

F.3d at 917. It follows that Petitioner's appellate counsel did not provide ineffective assistance in failing to challenge trial counsel's performance on direct appeal. *See Diaz*, 402 F.3d at 1144–45. This is especially true where "no ineffective assistance [wa]s apparent on the face of the appellate record." *Cooper*, 137 So. 3d at 532 (*citing Mansfield v. State*, 758 So. 2d 636, 642 (Fla. 2000); *Hills v. State*, 78 So.3d 648, 652–53 (Fla. 4th DCA 2012)).

Finally, this court has considered all of Petitioner's claims for relief, and arguments in support thereof. *See Dupree v. Warden*, 715 F.3d 1295 (11th Cir. 2013)(*citing Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VI.  <u>Evidentiary Hearing</u>

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr's,* 647

F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitled a petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr's*, 834 F.3d 1299, 1318-19 (11th Cir. 2016), *cert. den'd*, 137 S.Ct. 2245 (2017). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), *cert. den'd*, 541 U.S. 1034 (2004), an evidentiary hearing is not warranted here.

## VII.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). See 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the

petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, Petitioner may bring this argument to the attention of the district judge in objections.

## VIII. <u>Conclusion</u>

Based upon the foregoing, it is recommended that:

1.     the federal habeas petition be DENIED;

2.     a certificate of appealability be DENIED; and,

3.     the case CLOSED.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

SIGNED this 2nd day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   **Deven Cooper,** *Pro Se*
DC# L43743
South Bay Correctional Facility
Inmate Mail/Parcels
600 U S Highway 27 South
South Bay, FL 33493-2233

**Luke Robert Napodano**
Office of the Attorney General
1515 North Flagler Drive
Suite 900
West Palm Beach, FL 33401
561-837-5000 x179
Email: luke.napodano@myfloridalegal.com